## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| J.K.B. and D.A.B., by and through | § | |
| Next Friend, DANA BAKARI; | § | CIVIL ACTION NO. |
| D.B. by and through Next Friend, | § | |
| SHASHONA BECTON; and | § | |
| L.M.M. by and through Next Friend | § | |
| YOLONDRA MCKEVER | § | |
| | § | |
| v. | § | |
| | § | |
| DAVID ERIC CASEBOLT, Individually, | § | |
| and CITY OF MCKINNEY, | § | |
| KENNETH "SKIP" DAVIS, and | § | **JURY TRIAL DEMANDED** |
| CRAIG RANCH COMMUNITY | § | |
| ASSOCIATION | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, the Plaintiffs, J.K.B. and D.A.B., by and through Next Friend, Dana Bakari, D.B.

by and through Next Friend, Shashona Becton; and L.M.M. by and through Next Friend, Yolondra

Mckever, and complains against the Defendants, the City of McKinney, and Police Officer David

"Eric" Casebolt, individually and in his official capacity, Kenneth "Skip" Davis and Craig Ranch

Community Association, and for cause would show the court as follows:

### NATURE OF THE ACTION

1.      This is an action brought by the Plaintiffs against The City of McKinney for

excessive force, and against Eric Casebolt, for negligence, gross negligence, assault/battery,

intentional infliction of emotional distress, resulting in the injuries to minor children, J.K.B. and

D.A.B. under the color of law, in violation of their individual rights under the Fourth and

Fourteenth Amendments of the United States Constitution, and in violation of their civil rights

pursuant to 42 U.S.C. § 1983.  And against Kenneth "Skip" Davis, and Craig Ranch Community

Association for negligence, gross negligence, assault/battery, intentional infliction of emotional distress, resulting in the injuries to D.B., J.K.B. and D.A.B.

2.      Plaintiff alleges McKinney City Ordinance provides that the Chief of Police (Greg Conley) has immediate direction and control of the Police Department, subject to the supervision of the City Manager (Paul Grimes).  "The Chief of Police shall promulgate all orders, rules, and regulations governing the conduct of the Police Department, which, when approved by the City Manager… shall constitute the rules of the administration and conduct of the [Police] Department."[1]

3.      The Chief of Police, (subject to the approval of the City Manager) is the decision-maker and policymaker for the customs, practices, policies and procedures complained of herein. Conley had a duty, but failed, to implement and/or enforce policies, practices, and procedures for the McKinney Police Department ("MPD") that respected J.K.B. and D.A.B.'s constitutional rights. The duty to manage and train McKinney Police Officers was the responsibility of Chief Conley.

4.      Chief Conley's failure to implement the necessary policies and the implementation of unconstitutional policies deprived J.K.B. and D.A.B. of equal protection and due process under the Fourth and Fourteenth Amendment and caused them unwarranted and excruciating physical and mental anguish. For these civil rights violations and other causes of action discussed herein, Plaintiffs seek answers and compensation for their damages.

5.      Plaintiff alleges that Kenneth "Skip" Davis was President of Craig Ranch Community Association ("Craig Ranch"). And at all times was operating as agent of Craig Ranch.

## PARTIES

---

[1] City of McKinney, Texas Code of Ordinances, Chapter VIII § 63

6.     Plaintiff, J.K.B., a minor, is a citizen of the United States and a resident of Collin County, Texas, and appears by and through her "Next Friend" Dana Bakari. J.K.B. was only thirteen years old at the time of the incident giving rise to the causes of action claimed herein.

7.     Plaintiff, D.A.B., a minor, is a citizen of the United States and a resident of Collin County, Texas, and appears by and through her "Next Friend" Dana Bakari.  D.A.B. was fifteen years old at the time of the incident giving rise to the causes of action claimed herein.

8.     Dana Bakari is a citizen of the United States and is a resident of Collin County, Texas. At all times pertinent hereto, Dana Bakari was a resident of Craig Ranch subdivision in McKinney.

9.     L.M.M., a minor, is a citizen of the United States and a resident of Dallas County, Texas, and appears by and through her "Next Friend" Yolondra McKever. L.M.M. was fifteen years old at the time of the incident giving rise to the causes of action claimed herein.

10.     Yolondra McKever is a citizen of the United States and is a resident of Dallas County, Texas.

11.     Plaintiff, D.B., a minor, is a citizen of the United States and a resident of Collin County, Texas, and appears by and through her "Next Friend" Shashona Becton. D.B. was fifteen years old at the time of the incident giving rise to the causes of action claimed herein.

12.     Shashona Becton is a citizen of the United States and in a resident of Collin County, Texas.

13.     Defendant, the City of McKinney, is a municipality located in Collin County, Texas. The City of McKinney funds and operates the McKinney Police Department (MPD).  Chief of the MPD, Greg Conley, is responsible for the implementation of the police department's budget,

policies, procedures, practices, and customs, as well the acts and omissions, challenged by this suit.

14.     The MPD is also responsible for preventive, investigative, and enforcement services for all citizens of the City of McKinney. The City of McKinney may be served with citation herein by and through its attorney of record, William "Bill" Krueger, III, McKamie Krueger, LLP, 500 W. Lookout Drive, Richardson, Texas 75080.

15.     Defendant, David Eric Casebolt, ("Casebolt") upon information and belief, is a resident of Collin County Texas, and at all times material herein was a police officer acting in the course and scope of his employment for the City of McKinney Police Department.  Defendant Casebolt may be served upon his attorney of record, James T. Jeffrey, Jr., Law Offices of Jim Jeffrey, 2214 Park Springs Blvd., Arlington, Texas 76013.

16.     Craig Ranch Community Association ("Craig Ranch"), is a Texas non-profit organization with its principal place of business in Collin County, Texas.  Craig Ranch may be served upon its registered agent, Capital Consultants Management Corp. at 7800 N. Dallas Parkway, Ste. 450 Plano, TX 75024 USA.

17.     Defendant, Kenneth "Skip" Davis (Davis) is a citizen of the United States, and a resident of Collin County, Texas. At the time, Davis was President of the Craig Ranch.  At all times material herein, Davis was acting as agent and on behalf of Craig Ranch.  Davis may be served at 4809 Desert Falls Drive, McKinney, TX  75070, or wherever he may be found.

## JURISDICTION AND VENUE

18.     Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights, privileges and  immunities guaranteed to D.B.,

L.M.M., J.K.B., and D.A.B. by constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

19.     Venue is proper in this court because the causes of action occurred within the Eastern District of Texas, Sherman Division.

## STATE ACTION

20.     To the extent applicable, Defendant Eric Casebolt was acting under color of state law when he subjected J.K.B. and D.A.B. to the wrongs and injuries hereinafter set forth.

## FACTS

**A.     McKinney Police Raid Teen Party**

21.     On June 5, 2015, J.K.B. and D.A.B., minor children who were residents of Craig Ranch, attended an end of the year party at Craig Ranch, along with D.B. and L.M.M. who were personally invited by residents of Craig Ranch.

22.     The City of McKinney Police were called to the party for a "disturbance."  No one alleged or accused D.B., L.M.M., J.K.B. or D.A.B. of committing any crime. McKinney Police Officer David "Eric" Casebolt was one of the senior officers who arrived on the scene.  Eleven other officers also came to at the scene.

23.     As soon as he arrived on the scene, Defendant Casebolt began yelling and shouting obscenities at the black youth present at the pool party. He grabbed one black male teenager by the head and forced him to the ground. Casebolt yelled, "Get your asses on the ground!" and a group of black boys sat on the ground. Defendant Casebolt then ran and accosted two black boys

who were standing in the street and yelled at them to "Get the fuck over here!" and detained them by forcing them to sit on the grass. [2]

24.     After yelling at a group of girls which included D.B., L.M.M., J.K.B. and D.A.B., "Get your ass out of here!" Casebolt returned to the boys he had directed to sit in the grass.  He had no individualized, particularized probable cause to believe that any of the youth he confronted had violated the law.  They were not attempting to flee. Nor were they making any threatening gestures. Regardless, Casebolt proceeded to handcuff them.

25.     Casebolt then took a few moments to survey the scene. He even crossed the street at one point.[3] He specifically made it a point to detain almost all of the black males that he encountered, and none of the white youth.  Casebolt already had a group of black boys sitting in the grass.  None of them were attempting to leave.

26.     Casebolt started swearing at the boys yelling "Y'all make me fucking run around here with thirty pounds of God damn gear on in the sun 'cause you want to screw around out here!"[4] Casebolt then yelled toward a group of kids and to no one in particular, "Get your ass out of here!"

27.     Casebolt then turned his attention to the group of girls who were standing nearby and began yelling profanity at them and threatened to arrest them for talking.  "Y'all keep standing there running your mouths and you're gonna go too."[5] Casebolt threatened to arrest and detain the girl for talking, or "running their mouths" as he put it. By doing so, Casebolt essentially stated that he would arrest the girls for simply talking amongst themselves in a manner that in no way interfered with any lawful exercise of police authority.

---

[2] *Id*. at 0:57.
[3] *Id*. at 1:57.
[4] *Id*. at 2:20.
[5] *Id*. at 2:27 and Exhibit D

28.     "Get out of here!" Casebolt yelled. Some of the girls tried to reason with Casebolt. But he wouldn't listen. He just kept yelling. "I don't care!" "You're leaving now." "You are leaving now!" Leave!" "Then get your ass gone!" "Keep running your mouth!"[6] Once again, Casebolt reiterated his threat to arrest them for simply speaking to him, without in any way obstructing any lawful exercise of police authority, in violation of their Fourth Amendment rights.

**B.      Casebolt Attacks J.K.B. and D.B.**

29.     As soon as Casebolt heard one teen, later identified as "D.B." speak, he made good on his threats to arrest her for "running her mouth."  Defendant Casebolt turned toward D.B. with his baton raised forward and angrily yelled "YOU!" Casebolt proceeded toward D.B., who was approximately 15 – 20 feet away from him at that time.[7]  At that moment, D.B. was not anywhere near Casebolt. D.B. did not approach Casebolt. D.B. did not converse with Casebolt.  D.B. did not make any effort to engage with Casebolt in any manner whatsoever.  Nor did D.B. in any way make any attempt to interfere with Casebolt's duties. Casebolt apprehended D.B. for simply SPEAKING.

30.     There was no conceivable basis for any reasonable officer to believe, under the totality of the circumstances, that D.B.'s conduct in any way violated Penal Code Section 38.15. Accordingly, there was no probable cause whatsoever for Casebolt to approach or apprehend D.B.

31.     Once Casebolt reached D.B., he immediately grabbed D.B. by the wrist. Utilizing his tactical training and techniques, Casebolt then twisted D.B.'s arm behind her back and threw her to the ground.  Casebolt repeatedly called her a "motherfucker" as he violently swung her around and threw her on the ground.

---

[6] YouTube Video at 2:49.
[7] *Id*. at 2:50; and Exhibit E.

32.     Then, Casebolt yanked her up by her arm and viciously slammed D.B. on the concrete sidewalk.[8]

33.     When they saw Casebolt slam D.B. on the concrete, J.K.B. and D.A.B, along with several other kids, rushed over to check on D.B.  In his rage, Casebolt hit J.K.B. in the face.[9]



**Davis Assaults D.B., L.M.M., and J.K.B.**

34.     Kenneth "Skip" Davis rushed in and pushed J.K.B. and L.M.M.[10] Davis then proceeded to detain D.B. between his legs.[11]



---

[8] *Id*. at 3:05.
[9] *Id*. at 3:07.
[10] *Id*. at 3:09.
[11] *Id*. at 3:05.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**                                    Page 8 of 28

35.     Casebolt drew his service weapon on two black boys who had also come to check on D.B.[12]  Two other officers rushed in to stop Casebolt. Casebolt was so out of control that he even pushed the officers aside.[13]

36.     The entire time, D.A.B. could do nothing but watch in horror as her sister and friends were assaulted and battered.  She felt helpless.

37.     Officer Casebolt used excessive force against D.B. and J.K.B. which caused bodily injury to J.K.B. As a result of the incident and subsequent injuries, D.B., J.K.B., D.A.B., and L.M.M. continue to suffer and are in psychological distress from the assault.[14]

**D.     Policy-maker, Policy, and Customs**

38.     The City of McKinney has delegated policy-making authority and the training of the McKinney Police Officers to the Chief Conley, giving him the responsibility for setting training, supervision and disciplinary policies and assuring that they are followed.  The Chief of Police (subject to the approval of the City Manager) is therefore the final decision-maker and policymaker for the customs, practices, policies, and procedures complained of herein.

39.     Upon information and belief, there exists a custom/unwritten policy of lack of training, supervision, and discipline regarding excessive force incidents which result violations of constitutional rights by MPD officers.[15]  Such civil rights violations have resulted in at least twenty federal court cases being filed against McKinney.

---

[12] *Id.* at 3:11 - 3:13.
[13] *Id*. at 3:14.
[14] Exhibit A – Declaration of J.K.B.; Exhibit B – Declaration of D.A.B.; Exhibit C – Declaration of D.B.; Exhibit D – Declaration of L.M.M.
[15] Plaintiff pleads these allegations based upon information and belief, pending discovery in this matter.

40.     Upon information and belief, numerous other officers, including, and in addition to Casebolt, have been involved in various policy violations with little to no disciplinary action taken. The failure to train, supervise, and/or discipline has allowed constitutional violations to persist.

**E.     Casebolt's Prior Policy Violations**

41.     Upon information and belief, in 2005, MPD hired Casebolt against his training officer's recommendation that Casebolt not pass third phase training and that he not be hired due a dangerous circumstance created by Casebolt related to the detention/arrest of a black man.

42.     Since then, Casebolt's conduct has evidenced a pattern and practice of excessive force, particularly against black people.

43.     In 2007, in another situation involving the arrest of a black man, Casebolt was sued for use of excessive force.[16]

44.     Upon information and belief, in 2009, Casebolt was involved in the lethal shooting of a suspect during a SWAT raid.

45.     Upon information and belief, in 2009, Casebolt and other officers were involved in utilizing excessive force against a black man who was beaten while he was in hand cuffs. The other officers, including Casebolt, were suspended for two weeks, but still retained by McKinney.

46.     In 2010, during SWAT training, Casebolt received a call from his girlfriend informing him that she had been arrested.  Casebolt left training in his uniform, and in his service vehicle and went to bail her out of jail. He utilized his position and authority to obtain preferential treatment. He also followed her home in his service vehicle.  Casebolt was suspended for violating policy and dismissed from SWAT, but still retained by McKinney.

---

[16] *Albert Brown v. Eric Casebolt, et al.*, 4:08-cv-00291-MHS-DDB (E.D. Texas – Sherman Division) (2008).

47.     In 2010, a 15-year old black girl and a 16-year old black boy got into a fight at a hip-hop concert. When he responded, instead of de-escalating and breaking up the fight, Eric Casebolt engaged.  Casebolt's conduct led to another officer becoming permanently disabled. Casebolt was not disciplined and was retained by McKinney.

48.     In 2011, Casebolt was suspended without pay for three days for allegedly "stalking" his ex-girlfriend.  Reporting officers stated that he responded "emotionally." Yet, he was still retained by McKinney.

49.     In 2014, Casebolt violated McKinney Police Policy by posting official police business on social media.  Casebolt received only a written reprimand. And was still retained by McKinney.

50.     In the instant case, Casebolt's attorney, speaking on behalf of Casebolt, stated that Casebolt "let his emotions get the best of him."[17]

51.     McKinney Police Policy (Disciplinary Matrix) provides that if an officer commits one of more violations he/she should be subject to termination.  However, instead of terminating Casebolt, McKinney Police Department retained him.  Despite repeated violations of Police Policy, MPD retained Casebolt.  Despite numerous incidents and complaints about Casebolt's negative interactions with black citizens, McKinney Police department retained him.

52.     Upon information and belief, despite the recommendation of his training officer, that Casebolt would not perform well in a crowd, and that Casebolt should not be retained, McKinney Police Department retained him anyway.  MPD's continued retention of Casebolt in light of his repeated policy violations and emotional issues (in violation of MPD written disciplinary policy) demonstrate a custom/policy of failure to properly discipline, and of deliberate

---

[17] Exhibit I (Casebolt Attorney Video at 3:54).

indifference to his ongoing practice of violating constitutional rights of people he interacted with, and particularly black people.

53.     Upon information and belief, Defendant, The City of McKinney has a record of not providing MPD officers with adequate training, supervision, and discipline which results in not preventing the use excessive force by McKinney Police officers, especially as it relates to youthful offenders.  Upon information and belief, MPD has no written policy regarding handling juvenile detainees/arrestees.

54.     There is no evidence that Defendant Casebolt was in imminent danger. There were no signs of any visible injuries or bruising to Defendant Casebolt's body that would indicate that the use of excessive force was justified. Upon information and belief, MPD officers are not provided with adequate training regarding the use of force, especially against children.

55.     J.K.B. will show that at all times material hereto, Defendant Casebolt was acting in the scope of his employment as agent, servant, and employee of Defendant, The City of McKinney, specifically the MPD, within its executive branch and was performing a governmental function.

56.     Plaintiff will further demonstrate that Defendant Casebolt's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the MPD in regards to the use of excessive force for which The City of McKinney and Chief Conley knew, or should have known, but never provided the requisite and proper training.

57.     Moreover, no reasonably competent official would have concluded that the actions of Defendant Casebolt described herein would not violate J.K.B.'s rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Casebolt's conduct was justified.

58.     Eleven other officers were present on the scene. None of them used the level of force that Casebolt utilized.

59.     As a direct and proximate result of Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

60.     Upon information and belief, the MPD has not implemented policies and procedures to address excessive force incidents involving youth.

61.     Upon information and belief, the MPD has not implemented policies and procedures to address race-based policing.

<u>**EXCESSIVE FORCE**</u>
**COUNT I – 42 U.S.C. § 1983**
**(By J.K.B Against McKinney)**

62.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63.     Plaintiff will show that Defendant Casebolt's actions on the occasion in question were wrongful and constituted gross negligence in depriving J.K.B. of her constitutional rights, as alleged more fully below.

64.     Plaintiff will show that at all times material hereto, Defendant Casebolt had a duty to avoid infliction of unjustified bodily injury to J.K.B., to protect her bodily integrity and to not trample on her constitutional rights.

65.     Plaintiff will show that Defendant Casebolt failed to act as a reasonable police officer would have acted in the same or similar circumstances. That is, Defendant Casebolt, without lawful justification, in the absence of any threat whatsoever to his personal safety or that J.K.B. was at any time resisting a lawful arrest or detention, and caused injury to J.K.B. without

probable cause and/or legal justification. J.K.B. never made any threatening gestures towards the Defendant Casebolt or otherwise interfered with the lawful performance of his duties.

66.     Defendant Casebolt's actions were not objectively reasonable because he followed a procedure designed to inflict excessive force in against a minor child in a non-life threatening situation.

67.     J.K.B. will show that the Defendant Casebolt denied J.K.B. her right to be free from deprivation of her rights without due process of law, in violation of the Fourth Amendments to the United States Constitution. Plaintiff will further show that Defendant Casebolt was acting within the custom, policy, practice and/or procedures of the MPD in regards to the use of excessive force as authorized and/or ratified by Chief Greg Conley at the time of the incident.

68.     The force used by the Defendant Casebolt was unnecessary and unreasonable under the circumstances, as J.K.B., who was leaving the area and cooperating with Defendant Casebolt, did nothing to require the use of such excessive force.

69.     Plaintiff will further show that as a result of these violations of J.K.B.'s rights, Plaintiff has suffered damages within the jurisdictional limits of this court.

<u>**THE CITY OF MCKINNEY'S FAILURE TO**</u>
<u>**TRAIN, SUPERVISE, AND DISCIPLINE**</u>
**COUNT II – 42 U.S.C. § 1983**

70.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

71.     Defendant Casebolt, acting under color of law and acting pursuant to customs, practices and policies of The City of McKinney and the MPD in regards to the use of excessive force as authorized and/or ratified by Chief Conley deprived J.K.B. of rights and privileges secured

to her by the Fourth Amendment to the United States Constitution and by other laws of the United States.

72.     By failing to provide proper training in the use of excessive force, the MPD and Chief Conley exhibited deliberate indifference in failing to train to an obvious need for training of which they were on notice, based on the above-referenced allegations and confirmed incidents of excessive force on behalf of Casebolt and other officers, in violation of 42 U.S.C. § 1983 and of her constitutional rights.

73.     With respect to the claims made the basis of this lawsuit, The City of McKinney and the MPD failed to adequately train its employees regarding the use of excessive force. This failure to train its employees in a relevant respect reflects a deliberate indifference to The City of McKinney, the McKinney City Council, MPD and Chief Conley to the rights of the city's inhabitants and is actionable under 42 U.S.C. § 1983.

74.     McKinney developed and maintained a policy of deficient training of its police force in the use of force, including the use of excessive force in the apprehension of youthful individuals.

75.     Because McKinney does not have any policies nor provide any training regarding use of force against children, officers must rely upon excessive force training geared toward adults. The use of such tactics, techniques and measures made for adults which officers learn in training, was the proximate cause of J.K.B.'s injuries.

76.     McKinney's failure to adequately train regarding the use of excessive force against children leaves officers to rely upon the use of force training acceptable for adults, which subjects children to use of excessive force, in violation of their Fourth Amendment rights.

77.     By training on the utilization of tactics, techniques and measures made for adults, officers are highly likely to exceed the level of force necessary for a child.

78.     In 2009, a McKinney Police officer broke a child's arm using tactics learned in training.[18]  Therefore, McKinney has been on adequate notice that the level of force uses to restrain an adult is much more excessive than the level of force necessary to apprehend or restrain a child.

79.     McKinney knew or should have known that failure to adequately train would result in use of excessive force against children, in violation of their constitutional rights.

80.     The City of McKinney and the MPD's failure to provide adequate training to its police officers regarding the use of excessive force reflects deliberate indifference by of the McKinney and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of J.K.B.'s constitutional rights, a reasonable probability.

81.     J.K.B. will show that Defendant Casebolt's actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which McKinney knew or should have known that conduct such as evidence in the instant case was likely to occur, but never provided the requisite and proper training that would have prevented it.

82.     Upon information and belief, McKinney, acting through official and unwritten policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of J.K.B. failed to implement the policies, procedures; and practices necessary to provide constitutionally adequate protection to J.K.B. and implemented policies, procedures, and practices which were the moving force behind the violation of her constitutional rights

---

[18] *See Griffing v. McGrew, et al.*, 4:11-cv-00160 (E.D. Texas – Sherman Division) (2011).

83.     For instance, the following conduct, policies, and customs, inter alia, by Defendants violated J.K.B.'s constitutional rights:

a.      The City of McKinney Police Department's failure to adequately train or discipline its officers, including Casebolt;

b.      MPD's failure to discipline or terminate Casebolt and other officers for non-compliance with policy.

c.      MPD's policy on the use of force fails to address use of force against minor children;

d.      Failing to discipline, and if necessary, terminate officers with emotional problems based on prior violations;

84.     In addition, Chief Conley failed and refused to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the use of excessive force or detaining youth.  In so doing, Defendant, the City of McKinney knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred – i.e., J.K.B.'s injuries – in all reasonable probability would occur.

85.     The City of McKinney's failure to properly train its police officers regarding the use of force under the authority of Chief Conley was the proximate cause of the violations of J.K.B.'s constitutional rights.

## ASSAULT AND BATTERY
### COUNT V
### (By J.K.B. Against Casebolt)

86.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

87.     Defendant Casebolt intentionally and without consent placed J.K.B. in apprehension of imminent harmful contact and caused harmful bodily contact to J.K.B.

88.     Defendant Casebolt was aware but consciously disregarded the substantial and unjustifiable risk that harm to J.K.B. would result from his actions.

89.     Accordingly, Defendant Casebolt is liable to J.K.B. for compensatory and punitive damages.

90.     As a legal and proximate result of Casebolt's actions as set forth herein, Plaintiff J.K.A. suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

<u>**ASSAULT AND BATTERY**</u>
**COUNT VI**
**(By J.K.B. Against Davis)**

91.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

92.     Defendant Davis intentionally and without consent placed J.K.B. in apprehension of imminent harmful contact and caused harmful bodily contact to J.K.B.

93.     Specifically, Davis pushed J.K.B.

94.     Defendant Davis was aware but consciously disregarded the substantial and unjustifiable risk that harm to J.K.B. would result from his actions.

95.     Accordingly, Defendant Davis is liable to J.K.B. for compensatory and punitive damages.

96.     As a legal and proximate result of Davis's actions as set forth herein, Plaintiff J.K.B. suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life,

and other significant injuries, damages and losses for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## ASSAULT AND BATTERY
### COUNT VII
### (By L.M.M. Against Davis)

97.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

98.     Defendant Davis intentionally and without consent placed L.M.M. in apprehension of imminent harmful contact and caused harmful bodily contact to L.M.M.

99.     Specifically, Davis pushed L.M.M.

100.    Defendant Davis was aware but consciously disregarded the substantial and unjustifiable risk that harm to L.M.M. would result from his actions.

101.    Accordingly, Defendant Davis is liable to L.M.M. for compensatory and punitive damages.

102.    As a legal and proximate result of Davis's actions as set forth herein, Plaintiff L.M.M. suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## ASSAULT AND BATTERY
### COUNT VIII
### (By D.B. Against Davis)

103.    Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

104.    Defendant Davis intentionally and without consent placed D.B. in apprehension of imminent harmful contact and caused harmful bodily contact to D.B.

105.     Specifically, Davis restrained D.B. between his legs.

106.     Defendant Davis was aware but consciously disregarded the substantial and unjustifiable risk that harm to D.B. would result from his actions.

107.     Accordingly, Defendant Davis is liable to D.B. for compensatory and punitive damages.

108.     As a legal and proximate result of Davis's actions as set forth herein, Plaintiff D.B. suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses for which she seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

<u>**NEGLIGENCE**</u>
**COUNT IV**
**(By All Plaintiffs Against All Defendants)**

109.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

110.     Defendant Casebolt committed acts and omissions constituting negligence which were a direct cause of the injuries and damages described herein.

111.     Defendant McKinney committed acts and omissions constituting negligence which were a proximate cause of the injuries and damages described herein. Specific acts and omissions committed by McKinney include, but are not limited to, the following:

    a.   Failure to properly train or otherwise act to ensure that the officers of the MPD, including Defendant Casebolt, were properly trained in excessive force, crowd control, dealing with juvenile detainees and arrestees, and de-escalation techniques for non-violent circumstances;

    b.   Failure to properly train or act to ensure that officers of the MPD, including Defendant Casebolt, were properly trained under the circumstances;

c.  Failure to properly supervise or otherwise act to ensure that officers of the MPD, including Defendant Casebolt, acted appropriately during the course of their employment with the MPD;

d.  Failure to propagate rules, regulations, guidelines, policies or procedures reasonably necessary or sufficient to protect members of the public, including Plaintiffs;

e.  Failure to ensure that rules, regulations, guidelines, policies, or procedures reasonably necessary or sufficient to protect members of the public, including Plaintiff's, are followed and obeyed by officers of the MPD; and

f.  Otherwise failing to exercise due care under the circumstances

112.  McKinney negligently hired Defendant Casebolt inasmuch as he was not qualified to be a peace officer in the State of Texas.

113.  The conduct of Defendant Casebolt was such that Chief Conley knew or should have known that his conduct would naturally and probably lead to injury or harm and they continued that conduct in conscious and reckless disregard of the consequences from which malice can be inferred.

114.  At all times material herein, Defendant Casebolt was an agent, servant, or employee of the Defendant City of McKinney, Texas, and operated under color of state law within the scope of his employment, service, or agency. Any conduct on the part of Defendant Casebolt is imputed by law to the Defendant City of McKinney, Texas, which is vicariously liable.

115.  As a direct cause and result of the Constitutional violations by the City of McKinney as set forth herein, Plaintiff's incurred injuries for which they seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## GROSS NEGLIGENCE
### COUNT IX
### (By All Plaintiffs Against Defendant Casebolt)

127.     Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

128.     Defendant Casebolt had a duty to employ only reasonable measures in the treatment of each Plaintiff.

129.     Notwithstanding said duties, Defendant Casebolt acted in a wanton and willful manner, exhibiting such carelessness and recklessness as to evince a conscious disregard for the safety of Plaintiffs.

130.     As a direct and proximate result of the actions of Defendant Casebolt, Plaintiffs endured pain and suffering, mental anguish and severe emotional distress.

131.     Defendant Casebolt embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Plaintiffs to suffer extreme and severe mental and emotional distress, and anxiety.

132.     Defendant Casebolt's aggressive attack on an unarmed and defenseless children offends generally accepted standards of decency and morality.

133.     Defendant Casebolt's superior, Chief Conley called Casebolt's actions "out of control" and "indefensible."  He further asserted that the other eleven officers who responded to the scene conducted themselves reasonably. "I had twelve officers on the scene and eleven of them performed according to their training. They did an excellent job."

134.     Defendant Casebolt was aware that Plaintiff's had not committed a crime and Defendant Casebolt was not facing any imminent or serious threat of bodily harm or death. Thus,

he knew or should have known that he had no right to use any force whatsoever with respect to the Plaintiffs. He nonetheless unlawfully detained Plaintiffs through his use of excessive force.

135. As a legal and proximate result of Defendants' actions, each Plaintiffs suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

**COUNT X**
**DEFAMATION**
**(By All Plaintiff's Against Casebolt)**

136. Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

137. Subsequent to the incident Defendant Casebolt made several false and defamatory statements concerning the Plaintiffs' actions and behavior during the incident.

138. In Defendant Casebolt's statement, he imputed that the Plaintiffs' behavior was out of control in nature, for which his reaction was justified.

139. As a police officer, Defendant Casebolt knew or should have known that the widespread publication of his police report was possible, and that his false statements would proximately cause general and special damages to each Plaintiff and their reputation.

140. Defendants knew, anticipated, foresaw, and intended that the statements would be read by persons throughout the United States and failed to correct his police report before it was published nationwide.

141. The Statements have now adversely affected each Plaintiff's credibility, reputation, and caused emotional trauma and suffering.

142.    As a legal and proximate result of Defendants' actions, each Plaintiffs suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By All Plaintiffs Against Casebolt)

116.    Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

117.    Defendant Casebolt's conduct, as described above, was intended to and did inflict severe mental and emotional distress upon Plaintiffs.  Defendant knew or should have known that such conduct would subject Plainitffs to sever emotional distress.

118.    Defendant Casebolt's conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized society.   In fact, Casebolt's own superior Greg Conley characterized Casebolt's actions as "out of control" and "indefensible."

119.    Casebolt accosted and violently assaulted, and pulled his gun out on minor children dressed in swimwear.

120.    Casebolt's conduct proximately caused Plaintiffs damages in that it caused her suffer severe emotional distress. In particular, Defendant's conduct was the direct and proximate cause of severe mental pain and anguish.

121.    Plaintiffs' emotional distress has been severe in that they have suffered from anxiety, depression, loss of sleep, and loss of appetite.

122.    In addition to severe emotional distress, each Plaintiff has suffered and will continue to suffer additional damages as a proximate result of the defendant's conduct in that, in

all reasonable probability, Plaintiffs will continue to suffer this mental pain and anguish for a long time in the future.

### COUNT XI
### <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
#### (All Plaintiffs Against Davis)

123.    Plaintiffs hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

124.    Defendant Davis's conduct, as described above, was intended to and did inflict severe mental and emotional distress upon Plaintiffs.  Defendant knew or should have known that such conduct would subject Plaintiffs to sever emotional distress.

125.    Defendant Davis's conduct was extreme and outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, as to be regarded as atrocious and utterly intolerable in a civilized society.

126.    Davis, who was not authorized by any law to make contact with Plaintiffs took it upon himself to act as law enforcement and assist Casebolt in apprehension and detention of minor children.  Including making undesired physical contact.

127.    Davis' conduct proximately caused Plaintiffs damages in that it caused her suffer severe emotional distress. In particular, Defendant's conduct was the direct and proximate cause of severe mental pain and anguish.

128.    Plaintiffs' emotional distress has been severe in that they have suffered from anxiety, depression, loss of sleep, and loss of appetite.

129.    In addition to severe emotional distress, each Plaintiff has suffered and will continue to suffer additional damages as a proximate result of the defendant's conduct in that, in

all reasonable probability, Plaintiffs will continue to suffer this mental pain and anguish for a long time in the future.

## DAMAGES ALL DEFENDANTS
## COUNT VIII

130.    Plaintiff incorporates by reference paragraphs as if fully set forth herein.

131.    Defendants' acts and/or omissions were a proximate cause of the following injuries suffered by Plaintiff:

        a.    Actual damages;

        b.    Pain and suffering and mental anguish suffered by all Plaintiffs;

        c.    Loss of quality of life;

        d.    Exemplary and punitive damages as well as reasonable attorneys' fees and costs of court;

        e.    Pursuant to 42 U.S.C.  §1988, and other applicable laws, Plaintiff should be awarded reasonable attorney's fees for the preparation and trial of this cause of action, and for its appeal, if required;

        f.    Prejudgment interest; and

        g.    Post judgment interest.

132.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## PUNITIVE/EXEMPLARY DAMAGES
## COUNT IX

133.    Plaintiff incorporates by reference paragraphs above as if fully set forth herein. Additionally, and in the alternative, the conduct of Defendants Casebolt and Davis was done with malice. As such, Plaintiff requests punitive and exemplary damages to deter

this type of conduct in the future. In the alternative, such heedless and reckless disregard of Plaintiffs' rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiff requests punitive and exemplary damages are awarded against Defendant Davis in a sum which is within the jurisdictional limits of this court.

## COSTS AND ATTORNEY FEES

134.   Plaintiffs incorporate by reference paragraphs above as if fully set forth herein. Plaintiffs is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b) and other applicable provisions or in equity. As such, Plaintiffs requests the Court to award costs and attorney fees incurred in Plaintiffs' prosecution of this litigation.

## CONDITIONS PRECEDENT

135.   Plaintiffs reserve rights to plead and prove the damages to which they is entitled to at the time of trial. All conditions to Plaintiffs' recovery have been performed or have occurred.

## TRIAL BY JURY

136.   Plaintiffs have paid a jury fee and demand trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs has and recovers judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

 /s/  Kim T. Cole
KIM T. COLE
Texas State Bar No. 24071024
**K. COLE LAW, PLLC**
2770 Main Street, Suite 103
Frisco, Texas 75033
(214) 702-2551 (phone)
(972) 947-3834 (fax)
kcole@kcolelaw.com

**ATTORNEY FOR PLAINTIFFS**